[No. 10726. Department One. February 24, 1913.]

MELKER NILSSON, *Appellant*, v. A. P. MARTINSON *et al.*, *Respondents.*[1]

WORK AND LABOR—ACTION FOR SERVICE—IMPLIED CONTRACT—EVIDENCE—SUFFICIENCY. An implied contract to pay for clearing land is not shown, where it appears that plaintiff went upon the land of his son-in-law and used it for crops, from 1904 to 1911, without any request on the part of the defendant, or any demand for pay, or any offer to account for the products, on the part of the plaintiff, although crops were raised every year.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. Error in instructions is harmless where the court should have taken the case from the jury and directed a verdict against the appellant.

TRIAL—INSTRUCTIONS. An instruction that jurors should follow their own consciences or whatever they believe to be the truth, irrespective of anything else in the case, is an abstract platitude, and erroneous as tending to mislead the jury.

Appeal from a judgment of the superior court for King county, Myers, J., entered March 22, 1912, upon the verdict of a jury rendered in favor of the defendants, in an action on contract. Affirmed.

*Carl J. Smith*, for appellant.

*Edward Judd*, for respondents.

CHADWICK, J.—Plaintiff brought this action to recover the value of labor performed in clearing and reducing to cultivation about four acres of an 80-acre tract of land belonging to defendants. He alleges that the work was done at the request of defendants, and is of the reasonable value

[1]Reported in 130 Pac. 106.

of $993. Defendant A. P. Martinson, the only defendant served with process, answered, denying the allegations of the complaint, and alleged that plaintiff had gone on the land at his own request; that he cleared small parts where the soil was the richest and best and raised hay and vegetables, all for his own use and benefit; that no contract to pay was ever made or implied between the parties; that in February, 1911, plaintiff notified defendant that he was too old to do the work he had been doing; that accordingly defendant moved his family onto the land, and plaintiff made his home with defendant's wife, who is the daughter of the plaintiff, for about eight months, when plaintiff left, and a short time thereafter brought this suit.

The testimony of the plaintiff wholly fails to show any request on the part of the defendant, or any demand for any sum whatever for the work plaintiff had done between the years 1904 and 1911. It shows that he used the land as his own and never accounted, nor offered to account, to defendant for any of the products of the land, although the evidence shows that crops of hay and potatoes were raised in the year 1905 and in each year thereafter. The only evidence relied on to sustain plaintiff's case is his statement that "he promised he would always give pay for all the work that was performed on his ranch." This was in May, 1904, and before any work was done under the alleged contract. There is also the testimony of an unmarried daughter:

"Q. Did you overhear any conversation or conversations between Mr. Martinson and your father regarding that land? A. Yes, sir. Q. You may state to the jury what was said by Mr. Martinson, and what was said by Mr. Nilsson as well as you can remember. A. It was one day, it was very hot, and my father came home from work, he was clearing land and he sat down and he says, 'It is very hot work' and Mr. Martinson and Mrs. Martinson was there, and said,— and he says, 'We are paying you for the work you are doing.' Q. What land was it your father worked on? A. On Mr. Martinson's land. Q. When, about, was that conversation with

reference to the beginning of the work, or towards the end of the work? A. Well, it was just about the beginning. Q. The beginning? A. Yes. . . . Q. Now, this first conversation between your father and Mr. Martinson, when was that? A. Well, I couldn't really remember when it was. Q. What year? You have been here in the court room and heard the witnesses testifying, you heard it stated he first took hold of this land in the summer of 1904. A. Yes, sir. Q. When was it compared with that time, before or after that time? A. It was after that time. Q. How long would you say, was it that summer? A. No, sir; I believe it was in 1906. Q. You think when Mr. Martinson made that expression to him when he came in hot and tired, it was in the summer time? A. Yes, sir. Q. You think it was about two years after your father had been working on the land? A. Yes, sir; I think so."

This is wholly inadequate to prove a contract or to sustain the allegations of the complaint. Plaintiff had eighty acres rent free. Defendant, who is his son-in-law, had built a comfortable house for him to live in, paid the taxes, and met all the expenses of the land. Plaintiff had cows and chickens, raised hay and potatoes, and had for his pay all that he could make out of the land. He was, according to his own showing, being paid for his work. There is nothing even suggesting that he understood that he was to be paid in money. No contract, express or implied, is proved, or attempted to be proved. All this upon the plaintiff's case.

The defendant's evidence puts the case beyond the peradventure of a doubt. We shall not review it. No other verdict could have been rendered by the jury. It would have been the duty of the court to direct a verdict had a motion been made. This brings us to the errors assigned. The only assignments now material go to certain instructions given by the court to the jury. They are alleged to be bad, and they are bad. Those objected to are based upon a theory of the law that finds no warrant in the pleadings or the evidence, and if plaintiff had any case at all, would put an unwarranted burden of proof upon him. No purpose will be

served by quoting them, for notwithstanding their inapplicability, they will not be regarded as harmful.

"If it affirmatively appears from the record that in no event can the complaining party recover upon the facts, errors in the instructions, however flagrant, may be regarded as harmless." Elliott, Appellate Procedure, § 642.

A verdict will not be disturbed for erroneous or inaccurate instructions where "the court could have properly instructed the jury to find as they did." *Walbrun v. Babbitt*, 16 Wall. 577; *Barth v. Clise*, 12 Wall. 400.

"It would be idle to reverse the judgment and send the case back for a new trial if it be certain that the plaintiff cannot recover in the action." *Probst v. Brock*, 10 Wall. 528.

See, also, 3 Cyc. 385, and cases cited.

The court instructed the jury that:

"This is the important thing, gentlemen of the jury, in this land of ours, when a case is submitted either to the jurors or the trial court, that the jurors or the trial court should follow their own consciences, irrespective of anything else in the case; follow your conscience or whatever you believe to be the truth in the case."

We feel warranted in saying that we agree with counsel for respondents that the instruction complained of is "an abstract platitude which had no particular bearing on the case," and was "superfluous." Such instructions should not be given. They tend only to confusion. If not actually telling the jury that it must be convinced to a moral certainty which would in many cases make verdicts impossible, it does encourage the jury to reject testimony which it has no right to reject, and to ignore all of the pertinent instructions theretofore given. The instruction, wherever questioned, has been held to be error, and would be now if it were possible to send the case back for a new trial.

Affirmed.

CROW, C. J., GOSE, PARKER, and MOUNT, JJ., concur.