[No. 10566.    Department One.    November 1, 1913.]

A. L. McKAY, *Respondent*, v. SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

APPEAL—REVIEW—VERDICT. A verdict upon conflicting evidence, sustained by the trial judge, will not be disturbed on appeal, even if it seems to be against the preponderance of the evidence.

EVIDENCE—EXPERT EVIDENCE—OPINIONS. Upon an issue as to whether a passenger, alighting from a street car, was caught on the steps by a closing gate, it is not error to exclude the opinion of an expert, familiar with the construction of the gate and step, that it was impossible for the gate to have caught the plaintiff and caused the injury in the manner claimed, where the type and construction of the car and the manner of closing the gates was shown; since it was a question of fact for the jury.

APPEAL—REVIEW—HARMLESS ERROR. Upon an issue as to whether plaintiff was intoxicated at the time of the accident, hearsay evidence that he had been given liquor after the accident, accounting for his condition when seen later, is harmless, where it was merely cumulative of competent evidence to the same effect.

TRIAL—INSTRUCTIONS—BURDEN OF PROOF—PRESUMPTIONS—INTOXICATION. In an action for personal injuries, sustained by a passenger alighting from a street car, where there was a sharp conflict in the testimony as to whether plaintiff was intoxicated at the time, and plaintiff admitted drinking at a saloon shortly before the accident, there is no presumption that he was sober at the time of the accident, and it is error to instruct that the burden of proof was upon the defendant to show that he was intoxicated as claimed.

TRIAL—INSTRUCTIONS—BURDEN OF PROOF. It is error to instruct the jury that a party having the burden of proof must satisfy the minds and "conscience" of the jury by a preponderance of the evidence.

[1]Reported in 136 Pac. 134.

TRIAL—INSTRUCTIONS—CIRCUMSTANTIAL EVIDENCE. It is error to instruct the jury that circumstantial evidence is to be regarded when it is strong and satisfactory, and disregarded when it is not.

Appeal from a judgment of the superior court for King county, Gay, J., entered March 2, 1912, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by a passenger in alighting from a street car. Reversed.

*James B. Howe* and *A. J. Falknor*, for appellant.

*Revelle, Revelle & Revelle*, for respondent.

CROW, C. J.—Action by A. L. McKay against the Seattle Electric Company, a corporation, to recover damages for personal injuries. From a verdict and judgment in plaintiff's favor, defendant has appealed.

Respondent alleged that he was injured on one of appellant's "pay-as-you-enter" street cars, by having the gate closed on his foot as he was alighting, which caused him to be thrown to the street and injured. The appellant operates an electric street railway system, in the city of Seattle, a portion thereof being known as the Eastlake line, running from the business portion of the city past the University district to Cowen and Ravenna Parks. Before reaching the University district, the cars run easterly upon North 40th street, for some eight or ten blocks, crossing intersecting streets as follows: 11th avenue N. E., 12th avenue N. E., Brooklyn avenue; and 14th avenue N. E. The cars then run on 14th avenue N. E., to their destination.

On May 11, 1911, respondent was living on Brooklyn avenue, about one block south of its intersection with North 40th street. He contends, that about 11:30 o'clock, p. m., on that date, he and one J. O. Craven met in the business portion of the city and agreed to go home together; that they went into a saloon, had a glass of beer and a cigar; then walked to Third avenue and Union street, to board the Eastlake car; that two cars which passed were overloaded,

and they could not obtain passage; that they continued walking east on Union street to Sixth avenue, where they boarded an Eastlake car; that Craven alighted at 12th avenue N. E., one block short of Brooklyn avenue, respondent's destination; that respondent informed the conductor he desired to alight at Brooklyn avenue; that the necessary signal was given; that just as respondent had his left foot on the lower or last step of the car, and was taking his right foot off, and was about to alight, the conductor closed the gate on his foot, causing him to be thrown to the street and injured.

It is conceded that the accident, if it occurred at all, occurred upon a car operated by one Derry as motorman and one Warner as conductor. The trip sheet of the company, which was introduced in evidence, shows that their car left its southern terminus some fourteen blocks south of Union street, at 11:30, p. m., and again at 1:00 a. m.; the car, on the latter trip, being known as the "Owl" car. Appellant denies that respondent was injured by falling or being thrown from the car, but contends that he was so intoxicated and unable to care for himself that, in wandering around after alighting from the car, he fell upon the paved street and was injured. Respondent testified that as he was thrown from the car, he was stunned and became unconscious; that when his consciousness was restored, he endeavored to, and did remove himself from the tracks, but laid on the street for an hour or an hour and a half, during all of which time he was conscious; that he saw two cars pass going north and three pass going south; that he "hollered" to each of them as loud as he could; that he finally saw a policeman a block away, to whom he also "hollered;" that the policeman picked him up, carried him to a nearby store, and later helped him to his home. The motorman and conductor testified that plaintiff was intoxicated when he boarded, and also when he left the car.

The motorman testified that he remembered respondent because respondent asked him if the car went to Brooklyn

avenue, and attempted to board it at the front end. The conductor and motorman further testified that, on their return trip, they saw respondent staggering in the street near the corner of Brooklyn avenue; that their car was stopped; that respondent told them he was lost; and that the conductor directed him to his home. The motorman and conductor of another car testified that they also saw respondent staggering along Brooklyn avenue, about 1:40, a. m., as though he was lost. The police officer testified that he thought respondent was intoxicated, and that he so stated in his report to police headquarters. Respondent denied his intoxication, as did his companion Craven, and one other witness who saw him after the accident, but he and Craven admitted having taken a drink together, and respondent admitted having taken more than one drink.

There is no question but that respondent was injured in some manner on the night of May 11, or early on the morning of May 12, in the vicinity of Brooklyn avenue and North 40th street. He insists that he was injured by being thrown from the car in the manner above stated, while appellant contends that he, in some manner, received the injury after he had alighted from the car, and while he was wandering around in an intoxicated, lost, and dazed condition. The only evidence produced on behalf of respondent in support of his contention that he was thrown from the car was his own testimony. In his version of the accident itself, he is not corroborated by any other witness. On the contrary, he is contradicted by the testimony of the witnesses who saw him leave the car. Therefore, it became a vital issue to determine whether respondent was intoxicated when he left the car, and if so, whether his intoxication was such as to impair his consciousness and his recollection of the incidents to which he testified.

Appellant's first contention is that the trial court erred in denying its motion for a new trial on the ground of insufficiency of the evidence. There was a sharp conflict of evi-

dence as to whether respondent was intoxicated, and whether he was thrown from the car and was injured in the manner claimed by him. Conceding that the preponderance of the evidence as disclosed by the record may seem to be with appellant, yet both of these propositions were questions of fact for the consideration of the jury. There was evidence to sustain the verdict, which was approved by the trial judge. Under uniform rulings of this court, we conclude that we would not be warranted in disturbing the ruling of the trial judge that the evidence was sufficient to sustain the verdict.

It is contended that the trial court erred in excluding the testimony of one G. A. Richardson, an expert witness, by whom appellant sought to show that it would be impossible for respondent to have sustained the injuries of which he complains in the manner alleged; that the position of his body, with relation to the steps and gates of the car while he was in the act of alighting, would necessarily have been such that the gate could not have been closed against his foot while it was on the step as he alleged. The controlling dispute was whether the gates closed over the upper or lower step. The witness Richardson was appellant's superintendent of transportation, and had been in its employ for a considerable time. It is contended that his testimony was competent and material as tending to show the construction and operation of the gates, and the impossibility of the happening of the accident in the manner and under the circumstances claimed by respondent. Although the witness may have been more familiar with the construction of the cars than the ordinary individual who became a passenger, yet it was not for him to say whether the accident could have happened in the manner contended, but was a question for the jury, and we cannot conclude that it was prejudicial error to reject the testimony. Evidence was admitted on behalf of both respondent and appellant showing their respective claims as to the type and construction of the car, the manner in which the gates opened and closed, and whether they in fact closed

over the upper or lower step. It was for the jury to determine from this conflicting evidence how the car was constructed, and also to determine whether the respondent was injured, or could have been injured, in the manner alleged.

It is further contended that the trial court erred in admitting hearsay evidence of Dr. Bailey, a physician who attended the respondent on the morning after the accident. As above stated, the intoxication of respondent at the time of the alleged accident was a vital issue in the case, affecting his consciousness and credibility as a witness. There was a sharp conflict in the testimony on this issue. Several witnesses, in addition to the motorman and conductor, had testified that he was intoxicated when, or shortly after, he alighted from the car. Respondent denied this, as did Craven, and a lady witness who saw him an hour and a half or two hours after the accident. Dr. Bailey testified as to the mental and physical condition of respondent on the morning following the accident when he was attending him, stating that his breath smelled of liquor, although he did not think he was then under the influence of liquor; that he was perfectly rational, but that he was somewhat dazed as might have been expected in the case of an old man who had been lying out in the cold. Thereupon, the following appears in the record:

"The Court: Did you know anything about why his breath smelled of liquor? Was that accounted for? The Witness: I was told why his breath smelled of liquor? Q. At that time you were told why his breath smelled of liquor? A. Yes, sir. Q. What did they tell you? Mr. Falknor: I object to that as incompetent and hearsay. The Court: Overruled. Q. Answer the question. A. He had been given some liquor there at the house I was told, some whiskey or brandy."

While the testimony admitted was clearly hearsay, and was elicited by the trial judge, which fact might have given it some weight with the jury, nevertheless, it was cumulative of competent testimony given by other witnesses, and could not have been prejudicial.

The trial judge instructed the jury that there was a presumption of respondent's sobriety, and that the burden of proof was upon the appellant to overcome such presumption by a fair preponderance of the evidence. When facts are testified to by litigants and their witnesses, ordinary presumptions of fact will not prevail. Respondent admitted that, a short time prior to the accident, he had been drinking. This being so, there was no room for a presumption of his sobriety. That was a material issue which should have been determined by the jury on the testimony of respondent, and also of other witnesses who saw him upon the car, or in the street after he alighted. It would be just as fair to presume that a man who had taken several drinks was intoxicated to some extent, as it would be to presume he was sober, and require his adversary to assume the burden of proving that he was not. The inapplicability of the presumption mentioned, and the erroneous character of the instruction are manifest.

The court instructed the jury as follows:

"Therefore it follows, as a natural consequence, that the burden of proof is upon the defendant in this case to establish to your minds and conscience by a preponderance of the evidence that the plaintiff, on the night in question was in a condition of intoxication to any degree that his recollection was impaired or that said intoxication did on the night in question, contribute in any material manner to the proximate cause of his injury."

Now if it were to be admitted that there was room for a presumption of sobriety in this case, and that the burden of proof was upon appellant to show respondent's intoxication, the law most certainly does not impose on appellant the burden of satisfying the conscience of the jury upon that issue. Such instructions have been condemned in at least two instances by this court. In *Nilsson v. Martinson*, 72 Wash. 286, 130 Pac. 106, the trial judge told the jury to follow their own consciences. We said:

"Such instructions should not be given. They tend only to confusion. If not actually telling the jury that it must

be convinced to a moral certainty which would in many cases make verdicts impossible, it does encourage the jury to reject testimony which it has no right to reject, and to ignore all of the pertinent instructions theretofore given. The instruction, wherever questioned, has been held to be error, and would be now if it were possible to send the case back for a new trial."

In *State v. Harris*, 74 Wash. 60, 132 Pac. 735, a similar instruction was condemned. To satisfy the conscience is to be convinced of the absolute truth of a proposition. We said that the effect of the instruction complained of was to tell the jury that they must be satisfied beyond a reasonable doubt, and,

"A preponderance of the evidence does not necessarily mean beyond a doubt or even beyond a reasonable doubt. The jury might well have concluded that the weight of the evidence showed that the defendant was insane, and still not have been convinced beyond a doubt that he was insane. The term preponderance of the evidence merely means the greater weight of the evidence. 14 Ency. Evidence, p. 84.

"To require the defendant to establish his insanity by the greater weight of the evidence is all that is necessary. He is not required to prove that he was insane beyond a reasonable doubt or beyond a doubt, as the court in substance tells the jury they must find."

Furthermore, the court instructed upon the weight to be given to circumstantial evidence as follows:

"Circumstantial evidence is legal and competent in all cases and if it is of such a character as to exclude every reasonable hypothesis other than the one asserted, it is entitled to the same weight as direct evidence. Strong circumstantial evidence in cases is often the most satisfactory of any from which to draw the main conclusion. It is to be regarded by the jury in all cases and when it is strong and satisfactory, the jury should consider it, neither enlarging nor belittling its force. It should have its just and fair weight with the jury; and when it is all taken as a whole, the jury should act on such evidence."

This instruction, passing the fault of its argumentativeness, is wrong in that it, in effect, tells the jury circumstantial evidence is to be regarded when it is strong and satisfactory, and is to be disregarded when it is not. If the circumstances are competent, they may have but slight probative force, but however slight, they are to be regarded by the jury and weighed with all other evidence in the case.

For the errors above mentioned, the judgment is reversed, and the cause remanded for a new trial.

CHADWICK, MOUNT, GOSE, and PARKER, JJ., concur.